Good morning, may it please the Court. My name is Betsy Stevens for the Appellant, Mr. Lewis Potter. Now I remember last time I was here we gave you a trip from Georgia to Portland. Welcome back. Thank you. How many other trips have you had back in between the last time I saw you and this time? Was it October the last time? I think I had one in May and one in July. I'm sorry we couldn't give you better weather. I was hoping to give you a nicer trip. Okay. It's beautiful even when it's raining. Okay. So as you probably are aware, this is a Social Security disability case. Yes. And Mr. Potter was found not disabled by ALJ Madden. And I believe it was the fourth administrative hearing in his case. There was a prior district court remand and then another district court case, and that's why we're here today. And there's a few issues. Excuse me. The first one is that the ALJ improperly rejected the opinions of Mr. Potter's treating doctor, Dr. Kahn, and the opinions of Mr. Potter's examining doctor, Dr. Grunewald, and the opinion of the state agency reviewing physician, Dr. Pritchard. And the ALJ didn't provide legally adequate reasons for rejecting any of those opinions. And he read Dr. Kahn's opinion and Dr. Grunewald's opinion into the record at the hearing, and without asking the vocational expert any questions, he determined on his own that both of those opinions established disability. But are we not really talking about the credibility determination here? Isn't this the sine qua non of this entire case here, whether that credibility determination is supported or not? I mean, everything seems to rise or fall with that, doesn't it? Well, that's an important issue also, Your Honor. And the ALJ's reasons for finding Mr. Potter was not credible included that the ALJ believed his activities of daily living as they were described were not consistent with the disabling level of pain. But in order for us to overturn a credibility determination, there's a burden here. Our authority is somewhat limited as an appellate court, is it not? I mean, even if we were to come to a different decision, if we were the ALJ or the court below, aren't we constricted in terms of our appellate authority here to have to really show that this was clearly erroneous? And how can we do that? Well, Your Honor, the ALJ's interpretation of the facts of the case are entitled to deference, but the ALJ's interpretation of those facts and his application of the law and his determination of the legal consequences of those facts, that is up for review. But the ALJ is in a position to assess the credibility of the witnesses more so than we are, I suspect, right? And we have to give deference to that. Why in this particular case should we not give deference to that determination? Maybe you can point to chapter, book, and verse to tell me why the ALJ was wrong in the credibility determination. Okay, Your Honor. Well, first of all, the ALJ's reasons for finding Mr. Potter less than fully credible included his activities. And the activities the ALJ cited were Mr. Potter's ability to attend Boy Scout camp with his son and his ability to paint. And the Boy Scout camp, as Mr. Potter described his experience at the hearing, it was three days long, and he wasn't able to set up his tent by himself. He had to have others do that for him. And when he was at the camp, he did not go hiking with the scouts. His job was to sit at the campsite or lay down in his tent and make sure that no one stole their equipment while the scouts were out. And the painting, the only reason that painting is in the record is because Mr. Potter went to the emergency room after he tried to paint, because he hurt himself. And so his ‑‑ he clearly, I mean, he has the ability to try to paint, but I don't think that it was a good idea because it made his impairments worse. But did the ALJ really rely upon Potter's use of drugs and alcohol, his focus on trying to receive disability rather than getting well, and perhaps his exaggeration of his symptoms? I mean, are those credibility factors that the ALJ could assess and did assess in this particular case in coming to the decision that he was not credible? Well, those are factors that he did address. And one of the other factors that he addressed was Mr. Potter's ‑‑ there was a nerve block procedure that the examining physician suggested that Mr. Potter could get that might relieve his pain. And the reason ‑‑ the ALJ said that he didn't provide any reason why he didn't have this procedure. But what Mr. Potter actually said was that members of his family had had heart attacks and he was afraid that if he got this nerve block for the pain in his chest, that he wouldn't be able to feel it if he had a heart attack. And Social Security ruling 8259 says that if an ALJ is going to determine that the claimant failed to follow prescribed treatment, that the ALJ has to know that this treatment was expected to restore this person's capacity to work and that it was prescribed by a treating physician and that the person didn't have a good reason for not going through with it. And in this case, it was suggested by an examining doctor. It was not prescribed by a treating physician. There's no proof in the record that had he had this procedure done, that it would have definitely restored his capacity to work. And he did provide a reason why he didn't feel that the risks of this procedure were appropriate for his situation. Did the ALJ provide any analysis in terms of saying, but this doesn't sound like a very good reason for rejecting the treatment? The ALJ didn't really discuss Mr. Potter's reasons. What the ALJ said, well, at the hearing he said that if it were him, the ALJ, who was in pain, that he would have gone through with the procedure and he explained to Mr. Potter why he would have done it for himself. But in the decision, he didn't discuss Mr. Potter's fears regarding what might go wrong. Is there any evidence in the record from which we may or the ALJ might have concluded whether or not Mr. Potter's reason was a sensible one? That is to say, the stated reason is it's going to mask symptoms of a heart attack. That's correct. Now, do we know whether that, in fact, would have been the case, that it would have masked symptoms of a heart attack? Well, no one ever addressed in the record, to my knowledge, no doctor has said whether or not that would absolutely be the case. But I know that he discussed the pros and cons, the risks, with his treating physician, Dr. Kahn, and she noted in her treatment notes that Mr. Potter didn't feel the risks were acceptable. Now, did Dr. Kahn suggest this treatment, or you say only discussed it with him? What was Dr. Kahn's position with respect to this possible treatment? Dr. Kahn discussed it with him. She's not the one who suggested it. The person who suggested it was Dr. Grunewald, who was an examining doctor. Do we have a position from Dr. Kahn? Now, Dr. Kahn is the treating physician, correct? Yes. Do we have a position expressed at any point by Dr. Kahn as to whether this treatment would be a good idea? Whether or not she originally suggested it. She never said one way or the other whether she believed he should or shouldn't do it. She noted that she discussed the risks with him, and Mr. Potter didn't feel that the risks were worth taking. But basically it was never prescribed by a treating physician, and that's the beginning and end of this, right? Yes, Your Honor. Okay. How severe is the procedure itself, this nerve-blocking procedure? Do we have that in the record? Do we know what it entails? Well, I don't believe that Dr. Grunewald described exactly what it is. The ALJ was under the impression that it's just an injection, and that's what he told Mr. Potter at the hearing based on his own personal thoughts on that. But I don't believe that the doctor actually described what happens when this treatment is given. Okay. And the government can respond to that if it likes, okay? Yeah. Okay. Do you want to hear from the government and save your time?  Yes, Your Honor. Thank you. Good morning. May it please the Court, Jeff Staples, on behalf of the Commissioner, we would ask you to affirm the ALJ's decision because it is supported by substantial evidence and free of legal error. Turning to what has been the line of questioning here at, excuse me, at transcript 253, Dr. Kahn mentioned ---- Hang on a second. I'm slow. Are you giving me an ER page or a transcript page? What are we doing? Sorry. This is the transcript page. It's the numbers in the upper right. So where is it in the ER? I don't have page numbers of the way the ER is. It looks like you have an ER right in front of you. This is the ER. It says 253 in the ---- Okay. That's what I want. Yeah. 253. Sorry about that. So that's the ER page is 253? Yes. Okay. Got it. I'm on the page. Okay. So what do I look at? This is Dr. Kahn's opinion. About two-thirds of the way down the paragraph, she says, he was offered a nerve ablation, which in my understanding is the nerve block procedure that we're talking about. For some reason, how far along he's offered something, I'm having trouble picking that up. Five lines up from the bottom of that main paragraph. He was offered nerve ablation. Okay. But does not think the risk profile is satisfactory. So nerve ablation in your ---- I'm not a doctor, but your view ---- I'm not either. That's the injection procedure? That's my understanding, yes. And it was Dr. Jensen, the medical expert, who indicated that that was an injection to the ALJ. Okay. She was the treating physician? Dr. Kahn was the treating physician. Where does it say that she actually recommended that he undergo that treatment? Where is it that she prescribed it specifically for him? That this ---- it just says he was offered a nerve ablation, so I guess that's not ---- That's not the same as prescribing it. That's not the same as a prescription. But SSR 8259 covers situations where the ALJ is going to deny the claim on the basis of a lack of treatment. This is not a denial of the claim on the basis of a lack of treatment. This is just a credibility factor. Well, let's talk about that. I mean, do you agree that this case really rises and falls on the issue of the credibility determination by the ALJ? Well, I think the fact that there seems to be no objective medical evidence supporting Mr. Potter's claims ---- Well, let's talk about that, because I had some fibromyalgia cases. Back in the Second Circuit, they made it very clear that there are certain types of problems where there is no objective medical evidence that you can rely upon to assess pain. And this is the same type of thing here. So when we're dealing with pain, I don't think objective medical evidence comes into play here at all. Well, I'm not aware of objective medical evidence that assesses pain, as you say. Right. But I'm also not aware that costochondritis, which is Mr. Potter's impairment, is similar to fibromyalgia in that respect. There's no medical opinions that say that, you know, we didn't find any objective evidence of this, but we wouldn't expect to. I'm not ---- my understanding, and again, as I've pointed out, I'm not a doctor, but it's my understanding that that condition reflects inflammation of cartilage in the ribs, and there was no ---- there were many objective tests that were conducted for this, which is something that you don't ---- Well, it seems that all the doctors, just about every one of them, did agree that he is suffering from that condition. We have even the commissioner's doctors acknowledge that he has this condition. There was some question over the period of years exactly whether he did or did not have it, but I think everyone's on the same page. And there's a specific finding by the ALJ that he did indeed suffer from that condition. There's no question about that, right? Yes. So I don't understand why we can draw any adverse credibility determinations on this record, and I invite you to tell me how we can do it. Is your argument based solely upon the fact that he did not express a willingness to undergo this particular type of treatment that destroys his credibility? No, there were other credibility factors in addition to that one. What were they? Yeah, go ahead. One of them was the inconsistent statements that Mr. Potter made about his work history. Well, for example, what? For example, he told Dr. Levin that he was previously a roofer but quit two years ago because of the pain. Right. This was inconsistent with his other statements that he did not end his work due to his conditions, but later. Those were two years apart. They were two different situations completely. I don't see where they're inconsistent at all. What else do you rely on? Well, because I think Dr. Levin was after. It seemed like those were referring to the same ending of his work. Two different jobs he's talking about, two different periods of employment from the way I read the record. What else do you rely on? Sorry. Dr. Levin's opinion was in 2005. Right. So Dr. Levin referring to two years ago, quit because of the pain, would have been 2003, which was after his application. So I think it's reasonable to find that those were inconsistent statements. What else do you rely upon? Well, we're also relying the ALJ also relied on Mr. Potter's focus on getting disability, which What's wrong with that? I mean, if he had Look, this has been an assistant for 10 years, correct? Yes. I mean, this is 10 years this man's been trying to get on disability benefits. And he's made repeated efforts to do this. I don't see where that has anything to do with credibility. Let me also ask you this. In terms of this nerve block, whatever that's all about, the suggestion is that he's not credible because he didn't want to undergo that procedure. But look at the history as I read the record. Tell me if I'm wrong. He has seen numerous specialists, tried a variety of treatments. NSAIDS, I guess that's some sort of a steroid. Nortripiline, if I'm pronouncing it correctly. Norentin, TENS, steroids, Vicodin, lidocaine patches, he even paid for them himself. As I read this record, this doesn't paint a picture of a person who is not interested in treatment. To the contrary, he over a period of 10 years sought many, many, many doctors to try to alleviate his condition. The only thing he did not want to do was to undergo that particular nerve block procedure. He tried everything else to assuage his pain. Am I reading this record incorrectly? Well, I think it's significant that Dr. Grunwald indicated that it would restore 100 percent mobility and make him fully able to perform gainful activity. Well, he concluded that Potter was not employable in gainful activity other than possibly a sedentary job in which he can periodically change his body position or stay reclined at a 45-degree angle. That was the examining doctor, the only examining doctor, I guess, upon the remand, in addition to Dr. Pritchett, who concluded that Potter could not sustain these activities over a course of a 40-hour work week. It doesn't sound like even the commissioner's doctors are talking about somebody who was malingering, who had tried to spend a decade of his life to try to get on the disability rolls. I just don't get it. But if you have anything else you want to tell me about it, I'm willing to listen. Well, the last thing the ALJ mentioned other than minimal objective findings, noncompliance with treatment, and inconsistent statements was, as opposing counsel pointed out, the activities of daily living. That's what you're talking about, the going to the Boy Scout camp, that's what you're relying upon? Yes. How about the fact that we have the mother-in-law and the other family members, what, his wife and somebody else? Yes. Wasn't the ALJ required to assess their credibility? He just summarily dismissed them. And this was remanded for specifically the purpose, amongst other things, of assessing the family members' credibility, and he didn't do that. Well, the ALJ linked the credibility finding with the rejection of the lay witness statements. The ALJ said the claimants and third-party statements are not credible to the extent they are inconsistent. Well, I know that's a conclusion, but what does that mean? I'm trying to find out where these inconsistencies are that support this conclusive statement that justify the ALJ in not making any credibility determinations about the three family members who testified, and that was one of the reasons why this case was remanded. Well, it's the Valentine case allows an ALJ to link the credibility factors to the determination of the weight to be given to lay witness statements. So when the ALJ provided the reasons for discounting Mr. Potter's credibility He can automatically discount everybody else's testimony as well? Is that your position? If the testimony is similar, and here it is, there's nothing that the lay witness has testified to that Mr. Potter himself didn't say, so there is nothing for I don't see any inconsistency, though. Maybe I'm missing something. I just don't see any inconsistency. Well, certainly if the credibility finding, if this Court finds the credibility finding is not supported, then the lay witness determination won't be supported either. It seems like we're going around in a round circle here. I'm trying to be very focused. You've tried to add a few things that you say justify the ALJ's credibility determination. It doesn't register with me. But, you know, if you want to say anything else to try to convince me, this is the purpose of oral argument. Well, I would say that the question is not whether, as you pointed out, the question is not whether this Court would make a different determination were it in the ALJ's position. The question is, was the ALJ reasonable in concluding, for example, that activities like the Boy Scout camp or the air guns That's over 10 years. This is the one thing you rely upon, you know, to say that the ALJ's determination was reasonable because he went to a Boy Scout camp and he testified that he didn't do any physical activities there. He just went to the camp. He's able to move about. He obviously has a history of pain, which seems to be pretty credible here. And that's the finding of the ALJ, in fact, that he has this condition which causes pain. And I guess he can walk. I guess he can do things. But the abject pain that he suffers over a period of 10 years seems pretty profound to me. Well, Dr. Hoffman, Mr. Potter's treating physician, also noted that Mr. Potter was, quote, pretty normal for Boy Scout camp and gave him complete clearance to go on the basis of the costochondritis. So that supported the ALJ's conclusion. Let me ask you this. As a version of the question I asked your adversary earlier, what evidence, if any, do we have in the record that allows the ALJ and, therefore, us to figure out whether the basis, the stated basis for rejecting the nerve block procedure that's going to mask heart attack symptoms, whether that's a reasonable basis upon which to refuse that treatment? What is there in the record that would allow the ALJ to make that determination? Is there anything from which the ALJ could conclude one way or the other as to whether or not that was a sensible reason to give as to why to reject it? Well, there's nothing in the record that would address those concerns from a medical standpoint. I guess the question is whether the ALJ was reasonable in making that assessment without specific medical findings in the record. One thing was that Mr. Potter was referring to it as a surgery, whereas Dr. Jensen, the medical expert, had indicated that it was a local injection. There was no general anesthesia. So these kinds of things lent to the reasonableness of the ALJ's finding in that regard. Right. Now, I understand Judge Block's point about fibromyalgia, which is an intensely frustrating condition because it's well-documented that many people have it and equally well-documented that among those who have it it's very hard to find objective physical evidence of the condition. And therefore, in fibromyalgia cases, it's very difficult to figure out whether the patient is malingering because you don't have the cross-check of physical stuff. In what ways, if any, is this condition different from fibromyalgia and that the pain, if it exists, should show up on sort of physical X-rays or other forms of examination? Well, for one thing, there is case law discussing fibromyalgia's resistance to objective testing. There's no such case law on costochondritis. And there's nothing in the medical records that suggests that this is a fibromyalgia-esque disease. There's no indication that any objective findings would be or there's no indication that objective findings would be expected to be negative. Do you think it was the Commissioner's obligation to explore the record to find out exactly whether or not this condition is comparable to fibromyalgia and there's sort of a void in the record about that? Well... Wouldn't he want to find out? Does she want to find out? I don't think that... I see my time is up. Can I just answer this? Please. I think the fact that numerous doctors conducted numerous objective tests. Dr. Kahn referenced a slew of objective testing, all of which was negative. That, to me, indicates that this... Why would doctors be conducting these objective tests if there's... If they're not expecting them to come up positive for something that indicates that there's a link between the pain that Mr. Potter described and some kind of objective testing? It doesn't... It's... I would say that the ALJ's reliance on that was reasonable given all of the objective tests in the record. Well, you get an objective test and you can determine that somebody can walk, he can lift 10 pounds in one hand, 5 pounds in the other hand. That's the province of objective testing. That was done, admittedly. But it doesn't seem to me that, you know, the focus was on whether or not this condition actually does cause pain. And I don't see where there's any medical evidence that supports this one way or the other. Can I just say that those objective tests that Dr. Grunwald... Those were not objective tests because Dr. Grunwald said it was only secondary to pain. He concluded that if Mr. Potter was experiencing the pain, which was not objectively verifiable, then he would be limited to the residual functional capacity that Dr. Grunwald described. But those tests are not objective in the sense of... Can I ask you this question? Why was it over a decade that Potter was taking all of these drugs and all the treatment for pain? If I could then... The lidocaine patches that he paid for himself, what was he doing that for? Because he wasn't experiencing any pain? I'm not submitting that Mr. Potter was not experiencing any pain. I'm submitting that it was reasonable for the ALJ to discount Mr. Potter's credibility and the reliability of the medical evidence in the record because there was no objective, no link between his description of the pain and any objective medical evidence. So you're really pinning your whole argument on the fact that for this type of condition, there has to be some objective evidence to allow somebody to determine whether somebody was experiencing pain or not, right? I think there should be a presumption that there should be a link between objective medical evidence and pain. And fibromyalgia is an exception under the case law, but I don't think that this Court should expand that into a blanket assertion that wherever there's pain... It's not for the Court to do. It is for the Commissioner to determine or the ALJ to determine whether this would fall into the same category as fibromyalgia. He can ask the doctors for their opinions about that. You can create a record. It seems to me at the very least he had an obligation to explore it. This has been going on for a decade. I mean, this guy doesn't seem like a malingerant to me. Well, I mean, again, the question is whether it was reasonable in the fact that there are so many objective tests in the record, all of which are negative. Yeah. Let me ask you this. Why was it remanded? I mean, this came back by stipulation on the part of the Commissioner that the record that was basically the same record before that we now have now didn't satisfy, apparently, the parties at that time that there was a proper analysis of determination in this particular case. What new happened upon the remand? I think that Grunewald was there, and then you had Pritchard, and they really gave testimony that seems to support the fact that he did have this condition and he was severely limited. What else was there that happened here on the remand? Well, there... Except that the he testified, I guess, his family members, they relied upon the prior record, right? Yes. That was sent back to assess their credibility. All right. Go ahead. It was a closed period, so his day last insured was December 31, 2007. Dr. Grunewald submitted an opinion in 2010, which I don't think related back to the period at issue, but the reason it was a stipulated remand was there were deficiencies in the ALJ decision to be cleared up. It wasn't a lack of... There were deficiencies in the ALJ decision that were cleared up on remand. I believe the ALJ did not sufficiently address opinions from Dr. Levin or mention the lay witness statements, as you pointed out, which the ALJ added analysis of Dr. Levin's opinion and linked the lay witness weighing to the claimant's credibility. Thank you. Now you've saved some time. Your Honors, as we were discussing earlier, there's no such thing as an objective test that can measure how much pain someone is in, and I think that's sort of what we're discussing here is whether this condition is similar to fibromyalgia in that no matter how many objective tests you do, x-rays, MRIs, that this is not a condition that's going to show up on that kind of testing. How do we know that? Well, as far as I'm reading in the medical record, what costochondritis is is inflammation of the cartilage where the ribs attach to the breastbone, and I'm not sure that there's a test that can measure that. And it all comes down to whether you believe Mr. Potter is in as much pain as he says he is and whether he's in as much pain as his doctors have expressed that he is. And the remedy that we're seeking here, based on the improper rejection of the doctor's opinions, based on the ALJ's improper rejection of Mr. Potter's testimony, based on the improper rejection of the two lay witnesses, when those pieces of evidence are credited as true, the evidence establishes that Mr. Potter is disabled. And that's it, Your Honor. Okay. Thank you. Thank you. Thank both sides for your arguments. Potter v. Commissioner of Social Security submitted for decision.
judges: Block, Trott, Fletcher